<u>**NOT FOR PUBLICATION**</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| CHILDREN FIRST FOUNDATION, INC., et al., | : | CIVIL ACTION NO. 04-2137 (MLC) |
|  | : | **MEMORANDUM OPINION** |
| Plaintiffs, | : |  |
| v. | : |  |
| DIANE LEGREIDE, et al., | : |  |
| Defendants. | : |  |

<u>**COOPER, District Judge**</u>

The defendants — including the defendant Diane Legreide,
former chief administrator of the New Jersey Motor Vehicle
Commission ("MVC") — move for reargument, pursuant to Local Civil
Rule ("Local Rule") 7.1(i), of so much of the Court's March 31,
2005 order (the "March Order") denying the part of their motion
to (1) dismiss the amended complaint, or (2) stay the action
initiated by the plaintiffs, Children First Foundation, Inc.
("Children First") and Dr. Elizabeth Rex, pursuant to <u>Pullman</u>
abstention.[1]  The defendants contend that (1) the Court
incorrectly concluded that the first two circumstances necessary
for <u>Pullman</u> abstention were absent, and (2) the existence of the
plaintiffs' facial First Amendment challenge did not warrant
denial of the motion.  (Defs. Br., at 1-2.)

---

[1] The Court also denied the motion to dismiss under the
doctrine of <u>Younger</u> abstention.  The defendants did not move for
reargument on that determination.

The defendants move alternatively to certify the March Order for interlocutory appeal to the Third Circuit Court of Appeals, pursuant to 28 U.S.C. § 1292(b) ("section 1292(b)").  The defendants argue that if the Court denies a stay of the proceedings under Pullman abstention, the Court should certify the question of its "improper denial" of the motion because the denial is a "controlling question of law," which "if decided erroneously by this Court . . . will surely cause reversible error on appeal." (Defs. Br., at 12.)  The Court will (1) grant the part of the motion seeking reargument, (2) deny the request to stay the action pursuant to Pullman abstention, and (3) deny the part of the motion seeking certification to the Third Circuit Court of Appeals.

**BACKGROUND**

The parties are familiar with the background of this action. (See 3-31-05 Mem. Op. & Ord.)  In a memorandum opinion and order dated March 31, 2005 (the "March Op."), the Court held, inter alia: (1) the first two special circumstances necessary for Pullman abstention were absent and, (2) analysis of the equitable factors weighed against abstention.  (March Op., at 10-11.) As such, the Court held that Pullman abstention was inappropriate in this case.

## DISCUSSION

**I.   Motion for Reargument**

    A.   Legal Standard

    The defendants move for reargument pursuant to Local Rule 7.1(i).[2]  Local Rule 7.1(i) provides that:

> A motion for reconsideration shall be served and filed within 10 business days after the entry of the order or judgment on the original motion by the Judge or Magistrate Judge.  A brief setting forth concisely the matter or controlling decisions which the party believes the Judge or Magistrate Judge has overlooked shall be filed with the Notice of Motion. . . .  No oral argument shall be heard unless the Judge or Magistrate Judge grants the motion and specifically directs that the matter shall be argued orally.

Id.

    A motion for reconsideration is "an extremely limited procedural vehicle," Tehan v. Disab. Mgmt. Servs., 111 F.Supp.2d 542, 549 (D.N.J. 2000), and is granted "very sparingly." Yurecko v. Port Auth. Trans-Hudson Corp., 279 F.Supp.2d 606, 608 (D.N.J. 2003).  Its purpose is to correct manifest errors of law or present newly discovered evidence, Arista Recs. v. Flea World, 365 F.Supp.2d 411, 415 (D.N.J. 2005), or advise of "an intervening change in the law." P. Schoenfeld Asset Mgmt. v.

---

    [2] The defendants mistakenly moved for "reargument" under Local Rule 7.1(g).  By Order dated February 24, 2005, the Local Rules were amended so that Local Rule 7.1(i) now governs motions for reconsideration.  The amended rule made no substantive change other than concerning filing of opposition papers, and it codified numerous decisions treating motions for reargument under former Local Rule 7.1(g) as motions for reconsideration.  See Allyn Z. Lite, New Jersey Federal Practice Rules 36-37 (2005 ed.)

3

Cendant Corp., 161 F.Supp.2d 349, 352 (D.N.J. 2001).  The moving
party may not use the motion to (1) relitigate old issues, (2)
advance new theories, or (3) secure a rehearing on the merits.
Auerbach v. Kantor-Curley Ped. Assocs., No. 01-854, 2004 WL
3037943, at *1 (E.D. Pa. Dec. 30, 2004).  Moreover, the moving
party must focus on those matters which it believes the Court
overlooked because the rule is limited to "encourage parties to
present their positions as completely as possible, and to prevent
parties from filing a second motion, with the hindsight provided
by the court's analysis, covering issues that should have been
raised in the first set of motions."  United States v. Jones, 158
F.R.D. 309, 314 (D.N.J. 1994).

    A movant "must show more than a disagreement with the
Court's decision.  [R]ecapitulation of the cases and arguments
considered by the court before rendering its original decision
fails to carry the mov[ant]'s burden."  P. Schoenfeld, 161
F.Supp.2d at 352.  The moving party is obligated to (1) point out
the controlling facts or dispositive case law that the Court
necessarily overlooked in rendering the decision, and (2)
concisely specify the suspect aspects of the Court's opinion with
all due particularity.  Ciba-Geigy Corp. v. Alza Corp., No. 91-
5286, 1993 WL 90412, at *2-*3 (D.N.J. Mar. 25, 1993).

B.   The Defendants' Arguments

The defendants argue that (1) the Court incorrectly concluded that the first two exceptional circumstances necessary for _Pullman_ abstention were absent, and (2) the existence of the plaintiffs' facial First Amendment challenge did not warrant denial of the motion.  (Defs. Br., at 1-2.)  Regarding their first contention, the defendants argue that the Court "incorrectly identified the state statutory issue to be evaluated in the _Pullman_ analysis." (_Id._ at 1.)  Specifically, the defendants claim that the Court should exercise _Pullman_ abstention — thereby staying the action — because the New Jersey state courts should resolve the parties' dispute as to the proper meaning of the term "logotype" in N.J.S.A. § 39:3-27.36(d) and N.J.A.C. § 13:20-39.8.[3]  The defendants further point out that:

> Whereas the [MVC] has construed [the term "logotype"] in the [special organization motor vehicle registration ("SOVR")] context as signifying solely an identifying

_____

[3] N.J.S.A. § 39:3-27.36(d) provides: "The representative also shall submit to the division the name or initials the organization wishes to be placed at the bottom of the plate and a logotype.  The use and arrangement of the name, initials, or logotype of the organization shall be in the sole discretion of the director."  _Id._ (emphasis added).
   N.J.A.C. § 13:20-39.8(a) states: "An organization . . . shall submit to the Division a . . . design which indicates the name or initials that the organization wishes to appear at the bottom of the . . . registration plate and the logotype, if any, that the organization wishes to appear on the . . . registration plate."  _Id._ (emphasis added).  N.J.A.C. § 13:20-39.8(b)(3) allows the Director to make the final determination as to the "use, arrangement and size of an approved organization's desired logotype."  _Id._ (emphasis added).

5

> "emblem" of the charitable organization, [the
> plaintiffs] assert[] that, like the various
> programmatic license plates authorized by the
> Legislature . . . the SOVR plates have been
> legislatively authorized to include slogans or messages
> independent of any identifying emblem of the
> organization.

(Defs. Br., at 2.)  As such, the defendants contend that the
Court should abstain from adjudicating this matter until the New
Jersey state courts address this issue of statutory construction.

   The defendants also claim that the existence of the
plaintiffs' facial First Amendment challenge did not warrant
denial of Pullman abstention.  As such, the defendants contend
that the Court's discretionary determination to deny staying the
action under Pullman was improper.  The defendants point out that
none of the "equitable considerations [listed in City of Houston
v. Hill, 482 U.S. 451, 467 (1987)] militating against abstention
are present here."  (Id. at 8.)

   The Court finds that the defendants present sufficient
circumstances to warrant reconsideration of the March Order with
respect to only the Court's analysis of the first two Pullman
factors.  The Court "overlooked" the issue of interpreting the
term "logotype" in N.J.S.A. § 39:3-27.36(d) and N.J.A.C. § 13:20-
39.8.[4]  However, as to the defendants' second contention in

---

   [4] The Court notes that neither of the parties presented the
dispute over the term "logotype" in their briefs concerning the
motion to dismiss or stay.  This "issue" was first brought up at
oral argument.  (See dkt. entry no. 10.)

support of their motion, the defendants have failed to point out the controlling facts or dispositive case law that the Court necessarily overlooked in rendering its analysis of the discretionary factors.  Instead, the defendants demonstrate only that they disagree with (1) the Court's interpretation of <u>City of Houston</u> and (2) the Court's analysis of the equitable factors justifying <u>Pullman</u> abstention.  Moreover, the defendants simply recapitulate the cases and arguments previously considered by the Court.  Accordingly, the Court will address the parties' submissions in connection with the motion to reconsider as to only the Court's analysis of the first two <u>Pullman</u> "exceptional circumstances".

## II.  Reconsidering <u>Pullman</u> Abstention

The defendants contend that the Court incorrectly concluded that the first two exceptional circumstances necessary for <u>Pullman</u> abstention were absent.  The defendants argue that the Court should abstain to allow the New Jersey state courts an opportunity to construe the term "logotype" in N.J.S.A. § 39:3-27.36(d) and N.J.A.C. § 13:20-39.8.  Although the Court finds that the defendants have pointed to an "unsettled issue of state law," the defendants have failed to demonstrate that resolution of this issue by the New Jersey state courts would "substantially narrow" the plaintiffs' federal constitutional claims in this case.

Federal courts generally lack the authority to abstain from exercising jurisdiction that has been conferred.  See New Orleans Pub. Serv. v. New Orleans, 491 U.S. 350, 358 (1989) ("[T]he federal courts' obligation to adjudicate claims within their jurisdiction [is] virtually unflagging.").  "Underlying [this] assertion[] is the undisputed constitutional principle that Congress, and not the Judiciary, defines the scope of federal jurisdiction within the constitutionally permissible bounds."  Id.  Nonetheless, because federal courts have discretion in determining whether to grant certain types of relief, abstention is appropriate in a few carefully defined situations."  Gwynedd Props. v. Lower Gwynedd Twp., 970 F.2d 1195, 1199 (3d Cir. 1992).  As such, "[a]bstention from the exercise of jurisdiction is the exception, not the rule."  Col. River Water Conservation Dist. v. United States, 424 U.S. 800, 813 (1976).

Abstention is "an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it[, and] can be justified . . . only in the exceptional circumstances where the order to the parties to repair to the state court would clearly serve an important countervailing interest."  County of Allegheny v. Frank Mashuda Co., 360 U.S. 185, 188-89 (1959).  "The abstention doctrine is not an automatic rule applied whenever a federal court is faced with a doubtful issue of state law; it rather involves a discretionary exercise

8

of a court's equity powers." Baggett v. Bullitt, 377 U.S. 360, 375 (1964).  Therefore, "[a]mbiguity in state law will not, standing alone, require abstention." Id.

A federal court may properly abstain under Pullman "when the plaintiff properly invokes the federal jurisdiction in the first instance and the federal court temporarily abstains from exercising its jurisdiction pending the state court decision on a state law question." Ivy Club v. Edwards, 943 F.2d 270, 280 (3d Cir. 1991).  Thus, "abstention under Pullman merely postpones the exercise of federal jurisdiction." Allen v. McCurry, 449 U.S. 90, 101 n.17 (1980).  Pullman abstention avoids (1) unnecessary constitutional pronouncements that could ultimately be displaced by a state court adjudication of state law; and (2) undue influence with state programs and policies.  Planned Parenthood of Central N.J. v. Farmer, 220 F.3d 127, 149 (3d Cir. 2000) (citation omitted).

Pullman abstention is appropriate when "'a federal court is presented with both a federal constitutional issue and an unsettled issue of state law whose resolution might narrow or eliminate the federal constitutional question.'" Chez Sez III Corp. v. Twp. of Union, 945 F.2d 628, 631 (3d Cir. 1991) (quoting R.R. Comm'n v. Pullman Co., 312 U.S. 496, 500 (1941)).  Three "special circumstances" must exist for a federal court to apply Pullman abstention:

9

> (1) Uncertain issues of state law underlying the
> federal constitutional claims brought in federal court;
>
> (2) State law issues amenable to a state court
> interpretation that would obviate the need for, or
> substantially narrow, the scope of adjudication of the
> constitutional claims; and
>
> (3) A federal court's erroneous construction of state
> law would be disruptive of important state policies.

Id.

The Court, if all three "special circumstances" exist, must make a discretionary determination whether abstention is appropriate under the circumstances by weighing such factors as: (1) the availability of an adequate state remedy, (2) the length of time the litigation has been pending, and (3) the impact of delay on the litigants.  Id. at 631-33 (citations omitted).

## III. Exceptional Circumstances

The defendants claim that the Court's March Opinion "incorrectly identified the state statutory issue to be evaluated in the Pullman analysis." (Defs. Br., at 1.)  Specifically, the defendants contend that the Court "should [have] conclude[d] that the unsettled state law issue as to which the parties have offered divergent construction and which undisputably underlies plaintiffs' First Amendment claims is the proper meaning of the term 'logotype' in N.J.S.A. 39:3-27.36(d) and N.J.A.C. 13:20-39.8." (Id. at 1-2.)  The Court finds that the defendants have failed to satisfy the second prong of Pullman — namely, that a New Jersey state court's interpretation of the term "logotype"

would obviate the need for, or substantially narrow, the scope of adjudication of the plaintiffs' federal constitutional claims.

    A.   Uncertain Issues of State Law

    "Before Pullman can apply, the state statute . . . subject to federal constitutional challenge must be uncertain or ambiguous." Presbytery of N.J. v. Florio, 902 F.Supp. 492, 512 (D.N.J. 1995).  In addressing this first factor, the Court may consider whether the legislation at issue has been recently enacted or whether the law has been "authoritatively construed" by the state courts. Chez Sez, 945 F.2d at 632 (citations omitted).[5]

    N.J.S.A. § 39:3-27.36(d) has existed since 1988 and the Court found no authoritative published opinion by the New Jersey state courts construing the term "logotype" as defined in the statute.  Also, N.J.A.C. § 13:20-39.8 has existed since approximately 1994 and the Court found no New Jersey state court decision interpreting the term "logotype" as defined in the Code. Moreover, the parties have not cited a published decision by a New Jersey state court interpreting the term "logotype" in either of the aforementioned provisions.  As such, in the absence of any decision construing the term "logotype" as defined in N.J.S.A. §

---

    [5] But see Farmer, 220 F.3d at 150 (stating Pullman abstention inappropriate even where recently enacted partial-birth abortion statute has not been construed by state courts, where plaintiffs establish statute is so vague as to foreclose limiting state court interpretation).

11

39:3-27.36(d) and N.J.A.C. § 13:20-39.8, the Court finds that the meaning of "logotype" under these provisions is uncertain and weighs in favor of <u>Pullman</u> abstention.

      B.    State Law Issues Amenable to State Court Interpretation that Would Obviate the Need for, or Substantially Narrow, the Scope of Adjudication of the Constitutional Claims

The defendants claim that the Court should abstain from deciding the case because it presents an issue of state law of which a certain resolution by a state court may moot certain avenues of federal constitutional analysis.  A federal court may abstain under <u>Pullman</u> when faced with a federal constitutional issue that may be mooted by a state-court determination of state law.  <u>Farmer</u>, 220 F.3d at 149.  However, the Court is "not concerned with whether there is a bare, though unlikely, possibility that state courts <u>might</u> render adjudication of the federal question unnecessary, but rather whether the [statute] is obviously susceptible of a limiting construction."  <u>Chez Sez</u>, 945 F.2d at 633 (citations and quotations omitted) (emphasis in original).  Therefore, the Court must consider whether the term "logotype" in N.J.S.A. § 39:3-27.36(d) and N.J.A.C. § 13:20-39.8 is amenable to "an interpretation by the state courts that would obviate the need for or substantially narrow the scope of the constitutional issues."  <u>Id.</u> at 632.

The defendants claim that the Court's March Opinion "incorrectly identified the state statutory issue to be evaluated

12

in the <u>Pullman</u> analysis." (Defs. Br., at 1.) The defendants contend that the relevant state statutory issue is the meaning of the term "logotype" in N.J.S.A. § 39:3-27.36(d) and N.J.A.C. § 13:20-39.8.[6] As such, they argue that if a New Jersey state court were to define the term "logotype" as an "emblem", and thus, the chief administrator was without discretion to allow the message "Choose Life" below the image of the sun behind two smiling children to the left of the plate number (in the plaintiffs' first plate design), it would significantly narrow or moot the plaintiffs' First Amendment claims. (<u>Id.</u> at 4-6.) On the other hand, the defendants claim that if a New Jersey state court were to interpret the term "logotype" to include messages or slogans, then the chief administrator "incorrectly concluded that she was without statutory authority to allow inclusion of the advocacy message[, and] reconsideration by the MVC of [Children First's] application would be compelled." (<u>Id.</u> at 6.)

A New Jersey state court determination interpreting the term "logotype" in N.J.S.A. § 39:3-27.36(d) and N.J.A.C. § 13:20-39.8 would effectively narrow the plaintiffs' First Amendment claim

---

[6] There is no requirement that the Court precisely identify the limiting construction of state law that would avoid the constitutional challenge. <u>D'Iorio v. County of Del.</u>, 592 F.2d 681, 689 (3d Cir. 1978), <u>overruled on other grounds</u>, <u>Kershner v. Mazurkiewicz</u>, 670 F.2d 440, 448 (3d Cir. 1982). Moreover, as mentioned <u>supra</u>, the parties first mentioned the issue as to the definition of the term "logotype" at oral argument. (<u>See</u> dkt. entry no. 10.)

concerning the chief administrator denying their first license plate design.  However, it would not address the plaintiffs' other constitutional claims.  The defendants' arguments ignore the plaintiffs' alleged constitutional violations (including other First Amendment claims) because the chief administrator denied their second application (and design) for a specialty license plate.  In their second design application, the plaintiffs included the image of the sun behind two smiling children to the left of the plate number, but also included their legally registered name, "NJCHOOSE-LIFE.ORG", below the plate number.  The chief administrator denied the plaintiffs' second design because she claimed that the design included an impermissible advocacy message.  The chief administrator did not deny the design because of her interpretation of the term "logotype".  Rather, the chief administrator rejected the use of the words "choose-life" in the plaintiffs' "name".  Therefore, a state court's interpretation of the term "logotype" will not affect the plaintiffs' claim that the defendants violated their First Amendment rights with respect to the denial of the second plate design.

The plaintiffs also have asserted claims that the defendants violated their due process and equal protection rights because the chief administrator has "unfettered" discretion in determining the words, letters, symbols, or numbers that are

placed on a specialty license plate.[7]  Thus, although the defendants point to a limiting construction of N.J.S.A. § 39:3-27.36(d) and N.J.A.C. § 13:20-39.8, the defendants fail to demonstrate that a state court interpretation of the term "logotype" would "substantially narrow" the federal constitutional claims presented by the plaintiffs.  Accordingly, the Court finds that <u>Pullman</u> abstention is inappropriate in this case.

## IV.  Motion for Certification for Interlocutory Appeal

The defendants also move for certification of a question for interlocutory appeal pursuant to section 1292(b).  Section 1292(b) provides that:

> [w]hen a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, [the Court] shall so state in writing such order.

<u>Id.</u>  The moving party must satisfy three criteria for a district court to grant certification:

> (1) A controlling question of law;
>
> (2) Substantial ground for a difference of opinion as to the correctness of that question; and
>
> (3) An immediate appeal of that question will materially advance the ultimate termination of the litigation.

---

[7] <u>But see</u> <u>D'Iorio</u>, 592 F.2d at 682 n.12 (noting that presenting other federal constitutional claims in the federal litigation that will not be impacted by the state court ruling does not ordinarily preclude the federal court from deferring to the state courts to resolve a key issue).

Katz v. Carte Blanche Corp., 496 F.2d 747, 754 (3d Cir. 1974);
see also Levine v. United Healthcare Corp., 285 F.Supp.2d 552,
556-57 (D.N.J. 2003) (stating that moving party bears burden of
showing all three requirements exist).  Even if the moving party
satisfies all three requirements, the Court may deny
certification because the decision to grant a section 1292(b)
certification for interlocutory appeal is "wholly within the
discretion of the [district court]."  Bachowski v. Usery, 545
F.2d 363, 368 (3d Cir. 1976) (citation omitted).

The Court sparingly applies section 1292(b) and uses this
section in only exceptional cases to "avoid protracted and
expensive litigation."  Milbert v. Bison Labs., 260 F.2d 431, 433
(3d Cir. 1958); see Katz, 496 F.2d at 755 (explaining that
section 1292(b) acts, in part, to avoid unnecessary trials).  The
Court should grant certification under section 1292(b) only when
an early appeal of a legal ruling would dispose of the litigation
more efficiently.  See Ford Motor Credit Co. v. S.E. Barnhart &
Sons, 664 F.2d 377, 380 (3d Cir. 1981).

A.   Controlling Question of Law

The defendants argue that whether the Pullman abstention
motion was properly denied is a controlling question of law
because it would be reversible on appeal if decided erroneously
by the Court.  (Defs. Br., at 12.)  The Court finds that the
defendants have failed to demonstrate a controlling question of
law to justify certification.

16

A question of law that would lead to a reversal on appeal if decided erroneously is a controlling question of law.  Katz, 496 F.2d at 755.  Questions of law that would not lead to reversal on appeal also can be controlling if they are "serious to the conduct of the litigation, either practically or legally."  Id. A court, in determining whether the question is "serious to the conduct of the litigation," should consider whether resolution of the question would save (1) the court's time or (2) expense to the litigants.  Id. (citation omitted).  "The key consideration is not whether the order involves the exercise of discretion, but whether it truly implicates the policies favoring interlocutory appeal."  Id. at 756.  These policies include the avoidance of (1) harm to a litigant from a possibly erroneous order, (2) possibly wasted trial time, and (3) unnecessary litigation expense to the parties.  Id.  The possibility of an interlocutory appeal is not eliminated merely because the order involved the district court's exercise of some discretion.  Id.

The defendants, while asserting that an erroneous decision to refrain from Pullman abstention would surely lead to reversal on appeal, fail to provide any explanation or supporting authority for this conclusion.  Without explanation or authority for their contention, the defendants cannot meet their burden of showing that a controlling question of law exists.

17

The defendants also contend that certification of the Court's Pullman abstention decision would narrow the issues to be addressed in the litigation.  (Defs. Br., at 13-14.)  The defendants, however, have failed to illustrate how resolution of the statutory construction issue would prevent a "wasted" trial or avoid unnecessary expense to the parties.  The defendants admit that even if their proposed construction of the statute is adopted, the plaintiffs will still have a viable First Amendment claim.  (Id. at 13.)  Nevertheless, the defendants contend that the issue would be limited to "whether the legislative prohibition in this context of any and all advocacy messages is violative of the First Amendment rights of the plaintiffs." (Id.)  However, as discussed supra, even if a New Jersey state court were to adopt a limiting construction of the term "logotype", the defendants' argument unduly narrows the First Amendment issues that would remain before the Court.  The Court would still have to determine, inter alia, whether (1) there is a legislative prohibition of any and all advocacy messages, (2) the chief administrator's denial of the plaintiffs' second plate design constituted impermissible viewpoint or content-based discrimination violative of the First Amendment, and (3) N.J.S.A. § 39:3-27.36(d) and N.J.A.C. § 13:20-39.8 are unconstitutionally vague.  Because a resolution of the statutory construction issues would not eliminate or substantially narrow the plaintiffs'

18

constitutional claims, the Court does not find that there would
be a wasted trial without resolution of this issue, or that the
litigants would suffer unnecessary expense.

The defendants also have not claimed that they would suffer
any harm or prejudice because of an erroneous decision on the
Pullman abstention issue.  Thus, the Court finds that (1) the
policies favoring interlocutory appeal are not present here, and
(2) the defendants have not demonstrated that a controlling
question of law exists.

B. Substantial Ground for Difference of Opinion

The defendants claim that their multi-faceted challenge to
the Court's analysis of the Pullman issue demonstrates a
substantial ground for difference of opinion.  (Defs. Br., at
12.)  As part of their multi-faceted challenge, the defendants
argue that: (1) an unsettled issue of state law exists that would
narrow the scope of adjudication of the constitutional claims,
namely, the definition of the term "logotype"; (2) the case
relied upon by the Court in its discretionary determination is
distinguishable from this case; and (3) the existence of a facial
First Amendment challenge does not warrant denial of the
abstention motion.  (Id. at 6, 8.)

The defendants must show more than mere disagreement with
the Court's ruling to satisfy their burden of showing that there
is a substantial ground for difference of opinion.  Kapossy v.

McGraw-Hill, Inc., 942 F.Supp. 996, 1001 (D.N.J. 1996).  "The 'difference of opinion' must arise out of genuine doubt as to the correct legal standard."  Id.  "[D]isagreement with the Court's logic, without . . . contrary authority, does not create a legally sufficient difference of opinion."  Burns v. Lavender Hill Herb Farm, No. 01-7019, 2005 WL 545288, at *2 (E.D. Pa. Mar. 2, 2005).

The defendants, in support of their argument that the Court overlooked the existence of an unsettled issue of state law, merely urge the Court to reconsider the unsettled controversy over the construction of N.J.S.A. § 39:3-27.36(d) and N.J.A.C. § 13:20-39.8.  The Court, despite previously explaining in the March Opinion that there was no unsettled issue of state law here because these provisions applied directly to the plaintiffs (March Op., at 9), has now determined that an unsettled state law issue exists as to the definition of the term "logotype" in these provisions.  As such, this factor of the certification analysis favors the defendants.

Despite finding that the second element in the certification analysis favors the defendants, the Court will briefly address the defendants' arguments that the Court erred in finding that the equitable factors weighed against abstention.  In support of their claim, the defendants offer no authority to contradict the Court's logic and cited case law.  Therefore, the Court finds that the defendants have only expressed mere disagreement with

20

the Court's logic without establishing a legally sufficient basis
for a difference of opinion.

The defendants assert that the Court's reliance on City of
Houston v. Hill, 482 U.S. 451 (1987), is misplaced because that
case is distinguishable. (Defs. Br., at 8.)  The defendants
claim that the equitable considerations militating against
abstention in City of Houston do not exist here and, therefore,
City of Houston is not applicable.  (Id.)  Specifically, the
defendants allege that here, unlike in City of Houston, a
temporary delay in the final resolution of the federal claims
would not impact the plaintiffs or the public.  (Id. at 7.)

The Court does not need to address whether a delay in the
resolution of the federal claims would impact the plaintiffs
because the defendants, although asserting that the Court's
reliance on City of Houston was improper, do not offer any
authority to show that the Court's interpretation of that case
was legally unfounded.  The defendants, by attempting to
distinguish City of Houston, have only established that they
disagree with the Court's interpretation of that case.  Thus, the
defendants have not established that a substantial ground for
difference of opinion exists with respect to this issue.

Even if the defendants are correct in arguing that the
equitable considerations present in City of Houston do not exist
here, this would not invalidate the Court's discretionary

21

determination to not abstain.  When a district court makes a discretionary determination about whether Pullman abstention is appropriate in a particular case, that determination is based on a number of considerations, not just whether a delay would impact the plaintiffs or the public.  Biegenwald v. Fauver, 882 F.2d 748, 750-51 (3d Cir. 1989).  These considerations include the weight of each of the required special circumstances as well as "other relevant factors, [which include] the potential impact on the parties of the delay resulting from a decision to abstain[.]" Id.  The Court, in making the discretionary determination, is therefore not limited to considering only whether a delay would impact the plaintiffs or the public.

The defendants further argue that the existence of a facial First Amendment challenge does not warrant denial of abstention. (Defs. Br., at 9.)  The defendants rely on Robinson v. N.J., 806 F.2d 442 (3d Cir. 1986), as contrary authority to suggest that Pullman abstention can be upheld in the face of a First Amendment facial challenge.  (Id.)  However, the Robinson court chose to abstain because the State was in the process of executing a plan to make the statute in question comply with constitutional requirements.  Robinson, 806 F.2d at 449.  Here, there is no similar state effort underway to warrant Pullman abstention. Therefore, the Court finds that Robinson cannot be used as authority to contradict the Court's interpretation of City of

22

<u>Houston</u>, and the <u>Robinson</u> case does not establish a substantial ground for difference of opinion.  Accordingly, the defendants have not met their burden of showing that a substantial ground for difference of opinion exists with respect to this part of the Court's <u>Pullman</u> analysis.

      C.   Materially Advance the Ultimate Termination of the Litigation

The defendants contend that certification of the <u>Pullman</u> abstention issue would materially advance the ultimate termination of the litigation.  (Defs. Br., at 12.) Specifically, the defendants assert that certification would allow the Third Circuit Court of Appeals to use the Supreme Court of New Jersey certification process, pursuant to New Jersey Court Rule 2:12A-1, to obtain resolution of the statutory construction issue.  (<u>Id.</u>)  The defendants claim that resolution of this controversy would narrow the First Amendment issues and possibly eliminate the need for discovery, thereby materially advancing the ultimate termination of the litigation.  (<u>Id.</u> at 12-13.)

Practical considerations guide a court's determination of whether an interlocutory appeal will materially advance the ultimate termination of the litigation.  <u>Abi Jaoudi & Azar Trading Corp. v. Cigna Worldwide Ins. Co.</u>, No. 91-6785, 1992 WL 392583, at *4 (E.D. Pa. Dec. 16, 1992).  If the moving party shows that an immediate appeal would (1) eliminate the need for trial, (2) reduce the extent or cost of discovery, or (3)

simplify the trial by eliminating complex issues, the Court can conclude that section 1292(b) certification would materially advance the ultimate termination of the litigation.  <u>Titelman v. Rite Aid Corp.</u>, No. 00-2865, 2002 WL 32351182, at *3 (E.D. Pa. Feb. 5, 2002).  The Court, however, must also bear in mind the policy of the federal courts against piecemeal appeals and their inherent delays.  <u>Eisenman v. Cont'l Airlines</u>, No. 96-1368, 1997 U.S. Dist. LEXIS 17607, at *4 (D.N.J. Aug. 1, 1997).

The defendants have not demonstrated that certification of the <u>Pullman</u> abstention question would materially advance the ultimate termination of the litigation.  As discussed <u>supra</u>, the defendants admit that a First Amendment claim will remain regardless of how the statutory construction issue is potentially resolved.  The need for a trial on the federal constitutional issues thus would not be eliminated or substantially narrowed through certification.  The defendants, while claiming that the need for discovery will be eliminated if the statutory construction issue is resolved in their favor, do not provide the Court with any information or evidence showing that a substantial savings of time or cost would be achieved by certification.

The defendants' motion, if granted, may ultimately narrow some of the issues in this case.  This depends, however, upon a number of uncertain factors including whether (1) the Third Circuit would grant the defendants permission to appeal, (2) the

Third Circuit would opt to certify the statutory construction issue to the New Jersey Supreme Court, and (3) the New Jersey Supreme Court would accept the certification petition.  The Court finds that whatever time and expense may be saved by narrowing some of the issues in this case does not outweigh the risk of unnecessary delay.  Therefore, the defendants have not satisfied their burden of demonstrating that certification pursuant to section 1292(b) would materially advance the ultimate termination of the litigation.

### CONCLUSION

The defendants, although meeting their burden on the motion for reconsideration, fail to show that Pullman abstention is appropriate in this case.  The Court also finds that the defendants have not satisfied their burden on their motion for certification for interlocutory appeal to the Third Circuit Court of Appeals.  The Court will issue an appropriate order.

            s/ Mary L. Cooper
**MARY L. COOPER**
United States District Judge

25