**NOT FOR PUBLICATION**                                    **CASE CLOSED**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

_____
                                                        :
THE CHILDREN FIRST FOUNDATION,          :
INC., a New York non-profit corporation     :
duly registered in the State of New Jersey,    :
and DR. ELIZABETH REX, an individual,    :
                                                        :
                    Plaintiffs,                         :
                                                        :
          v.                                             :
                                                        :
DIANE LEGREIDE, individually and in her  :
official capacity as former Chief               :
Administrator of the New Jersey Motor       :
Vehicle Commission; SHARON               :
HARRINGTON, individually and in her       :          CIVIL ACTION NO. 04-2137 (JAP)
official capacity as Acting Chief              :
Administrator of the New Jersey Motor       :
Vehicle Commission; DARIA GERARD,       :          **OPINION**
individually and in her official capacity as    :
Director of Customer Operations for the      :
Jersey Motor Vehicle Commission; STEVE  :
ROBERTSON, individually and in his         :
official capacity as Director of Legal and     :
Regulatory Affairs for the New Jersey        :
Vehicle Commission; PETER C.              :
HARVEY, individually and in his official     :
capacity as Attorney General fo the State of  :
New Jersey; and JAMES E. McGREEVEY,   :
individually and in his official capacity as    :
Governor of the State of New Jersey,         :
                                                        :
                    Defendants.                        :
_____:

PISANO, District Judge.

 Presently before the Court is Defendants' motion to dismiss Plaintiffs' claims in the

Amended Complaint based on qualified immunity grounds.  Plaintiffs oppose the motion.

The Court has jurisdiction to hear this action pursuant to 28 U.S.C. §§ 1331, 1343(a)(3) and (a)(4), 2201, and 2202.  Having considered all arguments presented, the Court grants Defendants' motion to dismiss.

## I.      Factual Background

The New Jersey Legislature ("Legislature") has authorized the issuance of special organization vehicle registration ("SOVR") plates for members of the non-profit community, alumni, or service organizations.  N.J.S.A. 39:3-27.35.[1]  In order to be issued an SOVR plate, certain statutory requirements must be met.  First, an organizational representative must submit an application, with a copy of the organization's charter indicating the organization's lawful purpose and proof of its non-profit status, to the New Jersey Motor Vehicle Commission ("NJMVC").  N.J.S.A. 39:3-27.36(c).  Second, the organizational representative must submit a certification of membership containing "the organization's official letterhead, the signature of the organization's representative, the names and addresses of organization members requesting [SOVR] plates, and the present registration plate numbers of the vehicles of the members." *Id*. Lastly, with the exception of service organizations, the statute stipulates that the initial order for the organizational plates must be, at a minimum, 500.  N.J.S.A. 39:3-27.36(f).

Once the organization complies with N.J.S.A. 39:3-27.36, the NJMVC's Chief Administrator has the authority to make the final decision concerning whether to approve an organization's application for an SOVR plate.  Additionally, "the use and arrangement of the

---

[1] The statute was enacted in 1987 and amended in 1989.

name, initials, or logotype of the organization on the registration plates shall be in the sole

discretion of the [Chief Administrator]."  N.J.S.A. 39:3-27.36(d).  Pursuant to these regulatory

standards, the NJMVC, and its predecessor agency, the New Jersey Department of Motor

Vehicles ("NJDMV"), authorized the issuance of seventeen community SOVR plates.[2]  Def. Br.,

pg. 7.

On January 27, 2003, Plaintiff, Elizabeth B. Rex ("Dr. Rex"), requested approval on

behalf of Plaintiff, Children First Foundation, Inc. ("Children First") of an SOVR plate.  Dr. Rex,

as president of Children First, asserted in her application that Children First was a non-profit

community organization, with at least 500 members in good standing, which sought to "promote

and support adoption in the State of New Jersey."  Robertson Decl., Ex. A, pg. 8-9.  The

proposed design for Children First's organizational plate included its official copyrighted logo,

which is a small graphic of a yellow sun, two children's faces, and the words "Choose Life," its

Internet domain name and alternate legal name "Fund-Adoption.Org," and the vertical letters "A

D," to further promote the purpose of raising funds in support of adoption.  Am. Compl. ¶ 39.

Initial approval of Plaintiffs' design was granted on June 3, 2003; however, on July 2,

2003, a representative of NJMVC called Plaintiffs and alerted them that the organization's plate

design had been rejected because the agency deemed Children First's use of the words, "Choose

Life," too controversial for an SOVR plate.  The representative suggested alternative phrases

such as "Choose Adoption" or "Adopt a Baby."  Am. Compl. ¶ 43.  By letter dated November

24, 2003, Defendant, Chief Administrator Diane Legreide ("Ms. Legreide") advised Dr. Rex that

---

[2] The SOVR plate issued to the Center for Food Action, however, was recalled on November 24, 2003, for reasons discussed *infra*.

although Children First had met the preliminary statutory conditions, the submitted design of the slogan "Choose Life" could not be approved because it was considered a "slogan" and/or "advocacy message."  Ms. Legreide also enclosed a check for $12,500.00, which refunded Plaintiffs for the application fee the agency previously cashed on July 7, 2003.

In the November 24, 2003 letter, Ms. Legreide explained that the primary purpose of a license plate is for vehicle identification, as well as the differences between an SOVR plate and a special license plate that the Legislature has approved for a particular cause.  In the latter, the Legislature has specifically provided for the inclusion of a slogan or advocacy message, in addition to an emblem or logo, whereas in the former, only an organization's emblem or logo is permitted.  Accordingly, Ms. Legreide informed Dr. Rex that she could not approve the proposed plate design dated January 27, 2003, with the slogan "Choose Life" displayed with the logo of the two children.  Ms. Legreide advised Children First that her decision constituted a final agency action, which was reviewable by the Appellate Division.

Ms. Legreide sent Dr. Rex a follow-up letter dated Decemeber 4, 2003, in which she encouraged the organization to submit an alternative plate design consistent with the restrictions set forth in the November 24, 2003 letter.  In response, on December 16, 2003, Dr. Rex proposed removing the slogan "Choose Life" from the side of the plate, but retaining the picture of the children, and substituting Children First's newly registered domain name, "NJChoose-Life.Org," in place of the previously proposed "Fund-Adoption.Org" at the bottom of the plate.  On January 20, 2004, Ms. Legreide rejected Plaintiffs' alternative plate design, highlighting that the new domain name had not been registered until after the organization's original plate design had been rejected in the November 24, 2003 letter.  As such, Ms. Legreide would not "countenance this

4

attempt to have [Children First's] advocacy message on the license plate design by a belated attempt to make it the identification of [the] organization."  Robertson Decl., Ex. S, pg. 48. Again, Plaintiffs were advised of their right to seek appellate review of the final agency determination, which they did not exercise.

## II.  Procedural History

On May 4, 2004, Plaintiffs filed a Complaint, which they amended on February 18, 2005. In their Amended Complaint, Plaintiffs alleged that Defendants abridged their First Amendment right to freedom of speech by rejecting the inclusion of Children First's slogan "Choose Life" on their SOVR plate design.  Plaintiffs assert that the denials of their plate design constitutes an impermissible viewpoint discrimination with no countervailing, compelling governmental interest.  Am. Compl. ¶¶ 90, 97, 103.

Additionally, Plaintiffs claim Fourteenth Amendment due process violations based on Ms. Legreide's alleged arbitrary exercise of her discretion in withholding approval of the proposed SOVR plate design as well as the vague and over broad policies she applied.  *Id.* at ¶¶ 108-109.  Furthermore, Plaintiffs assert federal Equal Protection violations.  Plaintiffs contend that their Equal Protection guarantees were violated because other similarly situated, non-profit community organizations obtained approval to utilize "names and logo types that include slogans, mottos, symbols, advocacy messages, phrases, and other similar identifiers."  *Id.* at ¶¶ 113-114.  Plaintiffs seek damages as well as declaratory and injunctive relief seeking approval of their first rejected design in its entirety.

On March 31, 2005, the Court denied Defendants' motion to dismiss or stay the

proceedings on abstention grounds.  Defendants then moved, pursuant to Fed. R. Civ. P. 12(b)(6)
to dismiss the Amended Complaint in its entirety or, in the alternative, for dismissal of all claims
for damages based upon the qualified immunity doctrine.  The Court denied the motion on July
27, 2006.  On September 13, 2006, the Court denied Defendants' motion for reconsideration of
the Court's July 27, 2006 decision.

Defendants filed an appeal of the portion of the July 27, 2006 Order with the Third
Circuit Court of Appeals.  On December 20, 2007, the Third Circuit issued an Opinion and
Judgment vacating that portion of the Court's July 27, 2006 Order and remanded the matter for
further proceedings to decide the qualified immunity question.  The Third Circuit noted that until
the qualified immunity question was resolved, discovery should not be allowed.

On March 7, 2008, Defendants re-filed their motion to dismiss based on the qualified
immunity doctrine.  Plaintiffs oppose the motion.  Having reviewed the parties' submissions, the
Court now decides the motion.

## III.    Standard of Review

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss a complaint that fails
"to state a claim upon which relief can be granted."  FED. R. CIV. P. 12(b)(6).  In deciding a Rule
12(b)(6) motion to dismiss, the court must reasonably read the complaint and decide whether the
plaintiff has pled a cognizable cause of action entitling it to relief.  *Nami v. Fauver*, 82 F.3d 63,
65 (3d Cir. 1996).  In making this determination, a court accepts as true all of the well-pleaded
factual allegations within the complaint and any reasonable inferences drawn therefrom.  *Hayes
v. Gross*, 982 F.2d 104, 105-06 (3d Cir. 1992).  The court may also consider exhibits attached to

6

the complaint, matters of public record, and documents that form a basis of plaintiff's claim.

*Lum v. Bank of Am.*, 361 F.3d 217, 222 n.3 (3d Cir. 2004).  However, the court need not consider

plaintiff's bald assertions or legal conclusions.  *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902,

906 (3d Cir. 1997).

## IV.     Analysis

### A.     *Qualified Immunity*

Defendants will be entitled to a dismissal of Plaintiffs' claims for damages on qualified

immunity grounds if it appears that Plaintiffs' allegations do not state a violation of clearly

established law.[3]  Qualified immunity is an affirmative defense intended to shield government

officials performing discretionary functions from liability for civil damages, provided their

conduct "does not violate clearly established statutory or constitutional rights of which a

reasonable person would have known."  *Kopec v. Tate*, 361 F.3d 772, 776 (3d Cir. 2004) (citing

*Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  Qualified immunity is a matter of law to be

decided by the Court.  *See Carswell v. Borough of Homestead*, 381 F.3d 235, 242 (3d Cir. 2004)

---

[3] Defendants raise a sovereign immunity defense based on the Eleventh Amendment.  They argue that, although Plaintiffs claim that their First Amendment rights have been violated, Plaintiffs are actually asking the Court to enforce state, not federal, law against individual state officers.  As such, Defendants assert that New Jersey's sovereign immunity bars adjudication of Plaintiffs' claim that Ms. Legreide incorrectly construed her delegated powers.  *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89 (1983) (observing that "[i]t is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law").

The Court construes Plaintiffs' Amended Complaint as alleging violations of federal law. Therefore, the Court finds that Eleventh Amendment sovereign immunity does not apply and that Plaintiffs' suit against the individual state officers for violations of federal law will be permitted.  *See Ex Parte Young*, 209 U.S. 123 (1908) (observing that when a state officer performs an allegedly unconstitutional act and since no state could have authorized her to take such action, she acts beyond the scope of her authority and, thus, cannot invoke the state's immunity).

("The court must make the ultimate determination on the availability of qualified immunity as a matter of law.").

Furthermore, until the "'immunity question is resolved, discovery should not be allowed.'" *Thomas v. Independence Twp.*, 463 F.3d 285 (3d Cir. 2006) (quoting *Harlow*, 457 U.S. at 818). *See also Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) ("Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery."). There is no obligation on a plaintiff "to plead a violation of clearly established law in order to avoid dismissal on qualified immunity grounds;" however, if the "plaintiff, on his own initiative, pleads detailed factual allegations, the defendant is entitled to dismissal before the commencement of discovery unless the allegations state a claim of violations of clearly established law." *Thomas*, 463 F.3d at 293.[4]

In *Saucier v. Katz*, 533 U.S. 194 (2001), the United States Supreme Court held that a claim of qualified immunity must be analyzed using a two-step inquiry. The threshold question the court must examine is whether, taken in the light most favorable to the party asserting the injury, the facts alleged show that the actor's conduct violated a constitutional right. *Saucier,* 533 U.S. at 201. If the plaintiff fails to make out a constitutional violation, the qualified immunity inquiry does not need to proceed further. *Bennett v. Murphy*, 274 F.3d 133, 136 (3d Cir. 2002). If the plaintiff establishes a constitutional violation, however, the court must then examine whether the right violated is "clearly established." *Saucier*, 533 U.S. at 201. More

---

[4] If a "lack of factual specificity in a complaint prevents the defendant from framing a fact-specific qualified immunity defense," the court should remedy the situation by "the granting of a defense motion for a more definite statement." *Thomas*, 463 F.3d at 289.

specifically, "the right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant sense: the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

i.      Is There a Claim of a Constitutional Violation?

The First Amendment provides that "Congress shall make no law...abridging the freedom of speech, or of the press...." U.S. CONST. Amend. I. It is well-established, however, that "the government need not permit all forms of speech on property that it owns and controls." *Int'l Soc'y for Krishna Consciousness v. Lee*, 505 U.S. 672, 678 (1992). In determining whether Defendants violated Plaintiffs' First Amendment rights, the Court must conduct three inquires. First, in order to assess the validity of speech restrictions on government property, in this case license plates, the Court must classify what type of forum a license plate is. Next, the Court must determine the appropriate level of scrutiny for the type of forum. Lastly, the Court must evaluate whether the NJMVC properly applied the relevant standard in rejecting Children First's SOVR plate design. *See id*.

"The [Supreme] Court [has] identified three types of fora: the traditional public forum, the public forum created by government designation, and the nonpublic forum." *Cornelius v. NAACP Legal Def. & Ed. Fund*, 473 U.S. 788, 802 (1985). The type of forum dictates what speech, if any, the government may lawfully regulate or exclude. A traditional public forum is designated as such by looking at the objective characteristics of the property such as whether "by long tradition or by government fiat [the property is] devoted to assembly and debate." *Perry*

9

*Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45 (1983).  Here, the license plate is clearly not a traditional public forum.

A designated public forum is one the government "intentionally open[ed]...for public discourse." *Cornelius*, 473 U.S. at 802.  In assessing whether a designated public forum has been created, the Court must look to the policy and practice of the government agency.  "The government does not create a public forum by inaction or by permitting limited discourse, but only by intentionally opening a nontraditional forum for public discourse." *Id.*  The Court must also consider the "nature of the property and its compatibility with expressive activity" as well as whether the forum was "designed for and dedicated to expressive activities." *Id.* at 803. The government is not required to create such a forum nor is it required to retain the open forum once it has designated the forum as such.  However, as long as the government retains this type of open forum, "it is bound by the same standards as appli[ed] in a traditional public forum;" any exclusion of speech that the designated public forum is generally made available for will be subject to strict scrutiny. *Perry Educ.*, 460 U.S. at 46.

A sub-category of a designated public forum is known as a limited public forum.  "[A] limited public forum is a sub-category of a designated public forum that 'refer[s] to a type of nonpublic forum that the government has intentionally opened to certain groups or to certain topics.'" *Hopper v. City of Pasco*, 241 F.3d 1067, 1074 (9th Cir. 2001) (quoting *DiLoreto v. Downey Unified Sch. Dist. Bd. Of Educ.*, 196 F.3d 958, 965 (9th Cir. 1999)).  Government restrictions in a limited public forum are permissible "so long as they are 'viewpoint neutral and reasonable in light of the purpose served by the forum.'" *Az. Life Coalition, Inc. v. Stanton*, 515 F.3d 956, 969 (9th Cir. 2008) (quoting *Hoppe*r, 241 F.3d at 1075).

10

In contrast, a nonpublic forum is "public property which is not by tradition or designation a forum for public communication." *Id.  See also United States Postal Serv. v. Council of Greenburgh Civic Ass'n*, 453 U.S. 114, 129 (1981) ("the First Amendment does not guarantee access to property simply because it is owned or controlled by the government").  On properties such as these, the government may utilize "time, place and manner regulations" and "may reserve the forum for its intended purposes, communicative or otherwise, as long as the regulation on speech is reasonable and not an effort to suppress expression merely because public officials oppose the speaker's view." *Perry Educ.*, 460 U.S. at 46.

a.     *Forum Analysis[5]*

Plaintiffs assert that based on Defendants' "policies and practices in using the space and also the nature of the property and its compatibility with expressive activity," the SOVR plates are a designated public forum.[6]  *Christ's Bride Ministries, Inc. v. SEPTA*, 148 F.3d 242, 249 (3d Cir. 1998) (citing *Gregoire v. Centennial Sch. Dist.*, 907 F.2d 1366, 1371 (3d Cir. 1990)).  Plaintiffs contend that, as a designated public forum, the government restrictions against logos and slogans on an SOVR plate are subject to strict scrutiny.

---

[5] The Court refrains from conducting an analysis of whether Children First's speech constitutes government or private speech.  Defendants concede in their moving brief that this action concerns the exclusion of private speech.  Def. Br., pg. 42 n.16.  Therefore, the Court moves straight to a forum analysis.

[6] Plaintiffs argue that a forum analysis is unnecessary because "viewpoint discrimination is impermissible in any forum." Pl. Br. Pg. 21.  Plaintiffs' contention that a forum analysis is unnecessary is based upon the assumption that Defendants did indeed engage in viewpoint discrimination; however, neither the regulation nor the partial denials of Plaintiffs' SOVR plate designs is discriminatory on its face.  Without conducting a forum analysis, the Court cannot ascertain what speech, if any, the government may lawfully exclude from the forum.

11

The Court finds that the New Jersey motor vehicle license plates cannot be considered a designated public forum.  Rather, the Court characterizes the license plates as a limited public forum.  New Jersey did not intend to designate the SOVR plate as a public forum when it established the program.  The primary purpose of license plates is not to serve as a mechanism for organizational messages, but rather vehicle identification.  *See Perry*, 280 F.3d at168 (recognizing that the policy behind issuing license plates is to aid in vehicle identification and, because the "general public does not have unimpeded access to Vermont license plates," only those who obtain permission to place a message on their vanity plates may do so).  The issuance of license plates is highly regulated and subject to extensive state control.  *See* N.J.S.A. 39:3-32 to -33; N.J.A.C. 13:20-32.4.

Furthermore, the Court finds that an SOVR plate is not traditionally property that is "compatible" with the meaningful expression of speech, where people would engage in debate or assembly.  *Cornelius*, 473 U.S. at 802.  A license plate's physical size alone constrains any type of meaningful expression that may be imported onto the plate.  *See Perry*, 280 F.3d at 168 ("Because vanity plates are physically restricted by size and shape and by the state's interests, including that of vehicle identification, vanity plates are highly limited and extremely constrained means of expression.").

Additionally, an SOVR design is subject to restrictions.  For instance, an applying organization must provide a series of documentation verifying organizational and membership information.  *See* N.J.S.A. 39:3-27.6(f).  Such regulation does not support Plaintiffs' argument that the government intended to designate the SOVR plates as a public forum, as not everyone has access to these plates.  Moreover, neither the Legislature nor the NJMVC has intentionally

12

opened the nontraditional forum of license plates for indiscriminate public discourse as the agency has not established any practice of "permitting virtually unlimited access to the forum." *Christ's Bride*, 148 F.3d at 252 (holding that the advertising space in SEPTA stations was a designated public forum even though SEPTA retained the sole discretion to exclude advertising it deemed to be "objectionable"). *See also Cornelius*, 473 U.S. 788 (finding that the Combined Federal Campaign charity drive was not a designated public forum because it was selective in its access, the organizations had alternative channels to ask for donations, and the history of the drive did not support a finding that the government desired to provide an open forum); *Perry Educ.*, 460 U.S. 37 (deciding that a school's internal mail system was not a public forum because it was not open to the general public unless granted permission from the school principal). On the contrary, the Legislature has restricted access to these plates by requiring lawful non-profit organizations to apply and obtain permission for an SOVR plate, and will only be granted if the organizations satisfy the specific statutory requirements.

Having concluded that the SOVR plate is a limited public forum, the Court now turns to evaluate whether the NJMVC's policy prohibiting advocacy slogans or logos on the SOVR plate violates Plaintiffs' constitutional rights under the First Amendment.

b.     *Reasonableness and Viewpoint Neutrality*

Any governmental restriction on speech in a limited public forum need only be "viewpoint neutral and reasonable in light of the purpose served by the forum." *Az. Life*, 515 F.3d at 971. *See also Gen. Media Communications, Inc. v. Cohen*, No. 97-6029, 1997 U.S. App. LEXIS 40571, at *28 (2d Cir. Nov. 21, 1997) (explaining that, under a rational review analysis,

13

the governmental restriction on speech "need only be reasonable in light of the purpose of the forum...and reflect a legitimate government concern"); *Planned Parenthood of S.C., Inc. v. Carter*, 361 F.3d 786, 799 (4th Cir. 2004) ("Because license plates are publicly displayed and issued by the State, certain restrictions on speech within this forum are reasonable and permissible.").  A court should look to all of the circumstances surrounding the restriction, including the "substantial alternative channels [for communication] that remain open...." *Perry Educ.*, 460 U.S. at 53.

The NJMVC's partial denials of Children First's designs that identify its advocacy slogan or logo is rationally related to a legitimate state interest.  "Automobile license plates are governmental property intended primarily to serve a governmental purpose, and inevitably they will be associated with the state that issues them."  *Perry*, 280 F.3d at 169.  New Jersey has a legitimate interest in communicating that it does not approve or disapprove of any particular political cause, belief, or message.  Therefore, the Legislature's decision to authorize the NJMVC to approve of SOVR plates that identify membership in the nonprofit organization, but withhold authority from the NJMVC to decide which advocacy slogans or causes were appropriate to be identified on the SOVR plates, is reasonable and related to a legitimate state interest.[7]

Moreover, in making this determination, the Legislature has not deprived Children First of its only opportunity or access to advertise its cause or organizational message.  Similar to other nonprofit organizations seeking an SOVR plate, Children First could seek legislative approval of a license plate that would allow it greater flexibility in promoting its cause and

_____

[7] Children First's second proposed design, "NJChoose-Life.Org," could have easily communicated that New Jersey approved of the organization's slogan "Choose Life" as the State's name was directly associated with the website address.

14

message.  Furthermore, unlike the plaintiffs in *Perry*, *Arizona Life*, or *Sons of Confederate Veterans v. Comm'r of Va. Dep't of Motor Vehicles*, 288 F.3d 610 (4th Cir. 2002), the NJMVC did not flatly reject Children First's application.[8]  Simply because Children First was not allowed to have its slogan or logo on the plate does not mean the organization and its members' rights to assemble and speak have been impinged.  On the contrary, by allowing the Internet address on the SOVR plate, the NJMVC provided an avenue for the organization's members and others to communicate their message.  Beyond the SOVR plate, alternative means of speech remain available to Children First and its members such as flyers, buttons, bumper stickers, and license plate holders.

Having determined that Defendants' partial denials of Plaintiffs' designs were reasonable, the Court now addresses whether the denials were viewpoint discrimination.  In a limited public forum, the government may reasonably restrict speech on the basis of content; however, it cannot restrict speech on the basis of the speaker's viewpoint.  *See Perry Educ.*, 460 U.S. at 46. Plaintiffs assert that the rejection of their designs was based on viewpoint discrimination.  The Court finds otherwise.

Ms. Legreide's partial denials of Plaintiffs' SOVR plate designs were not because of any opposition to Plaintiffs' political, social, or religious viewpoint.  The NJMVC's decisions to prohibit the use of the slogan and website is not because of the message they stand for, but

---

[8] Initially, Legreide only partially rejected the advocacy slogan "Choose Life" and later, only partially rejected Children First's alternate domain name, "NJChoose-Life.Org," as the site was not registered until after the organization received the NJMVC's November 24, 2003 decision rejecting the design with "Choose Life."  Defendants were reasonable in their conclusion that the registration of the alternate site was an attempt to have their advocacy message placed on the SOVR plate through another avenue.

15

because Ms. Legreide has the statutory discretion as Chief Administrator to decide whether to include logotypes on SOVR plates, and Ms. Legreide has determined that slogans or advocacy messages will not be allowed, irrespective of what the organization's message is.[9]  Whether logos such as "Columbianism" or "Freemasons," *see* Am. Compl. ¶ 26, imply a particular viewpoint is irrelevant; logos such as those are allowed on the plates because they are not advocating a message such as "Choose Life" or "Drive Out Hunger."  None of the approved SOVR plates contain an advocacy message.

Further, unlike the plaintiff in *Sons of Confederate Veterans*, Children First is not held to a different statutory standard than other applying organizations.  Additionally, no other family group was given access to an SOVR plate to express their viewpoint.  *Contra Planned Parenthood*, 361 F.3d 786 (affirming the lower court's decision that South Carolina's statute authorizing the issuance of a "Choose Life" speciality plate without providing a plate for the alternate view violated the plaintiff's First Amendment rights).  Moreover, Plaintiffs' designs were only partially rejected.  Plaintiffs were allowed to use their original design, which included identification of the organization's website, as long as it did not include its logo along with the

---

[9] Plaintiffs attempt to support their claim of viewpoint discrimination by highlighting that the NJMVC had approved the organization, Center for Food Action's, SOVR plate design, which included the advocacy message, "Drive Out Hunger."  When Dr. Rex brought this to the attention of Ms. Legreide, Ms. Legreide reviewed the Center for Food Action's plate design.  By letter dated November 24, 2003, Ms. Legreide informed the Center for Food Action that its SOVR plate design had been mistakenly approved by her predecessor in 2001, and that the organization's inclusion of its advocacy message was inconsistent with the statutory requirements.  Therefore, Ms. Legreide advised that the final agency decision was to recall all of the existing plates.  *See* Robertson Decl., Apr. 26, 2006, pg. 7.  Although the NJMVC previously approved an SOVR plate design that contained an advocacy message, the agency has since recalled those plates and the Center for Food Action is no longer an organization listed as having a specialty plate.  Therefore, the agency is currently consistent with statutory requirements.  Furthermore, "that errors have happened in other instances does not mean that [Children First] is a victim of viewpoint discrimination."  *Perry*, 280 F.3d at 170.

words "Choose Life;" there was no impingement on members' right for assembly and speech.

The Court concludes that Defendants' restriction on slogans or advocacy messages on SOVR plates did not violate Plaintiffs' First Amendment rights because the SOVR plate is a limited forum, the restriction was reasonably related to a legitimate state interest, and Defendants' restriction on slogans or logos was viewpoint neutral.  Plaintiffs, however, allege that on July 2, 2003, a representative from the office of the Director of Customer Operations for the NJMVC alerted them via a telephone conversation that the use of the slogan "Choose Life" on their SOVR plate design was denied because the words were "controversial" and "political," Am. Compl. ¶ 42, and that the ensuing November 24, 2003 letter from Ms. Legreide was merely pretext.  Pl. Br., pg. 7 n. 4.  Whether the representative's statement was viewpoint discrimination, however, is immaterial.  The statute clearly provides that the Chief Administrator retains the sole discretion to determine whether logotypes are allowed on an SOVR plate.  Therefore, the Court views the follow-up letter sent by Ms. Legreide on November 24, 2003, denying the use of  the slogan "Choose Life" because slogans or advocacy messages are not allowed on SOVR plates, as superceding any conversation that Plaintiffs may have had with a representative.

The Court, however, recognizes that the present motion is a Rule 12(b)(6) motion to dismiss and, as such, the Court must accept as true all of the well-pleaded factual allegations.  Thus, the Court will view Plaintiffs' factual allegation of the July 2, 2003 phone conversation as true, and finds that a constitutional violation is alleged.  The Court now turns to whether there was a violation of clearly established law.

ii.      Is There a Violation of a Clearly Established Law?

Qualified immunity shields government officials from liability if they act "reasonably but mistakenly." *Anderson*, 483 U.S. at 641.  The Supreme Court has adopted an "objectively reasonable" test of the official's conduct.  A court must evaluate whether, objectively, the state actor would comprehend that her actions at the time violated clearly established law.  "Whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action...assessed in light of the legal rules that were 'clearly established' at the time [the action] was taken." *Anderson*, 483 U.S. at 639.  In other words, a court must judge the reasonableness of the action "from the perspective of a reasonable [official] on the scene, rather than with the 20/20 vision of hindsight." *Graham v. Connor*, 490 U.S. 386, 396 (1989) (citing *Terry v. Ohio*, 392 U.S. 1, 20-22 (1968)).  Further, in evaluating reasonableness, a court should consider if the "actions [were] 'objectively reasonable' in light of the facts and circumstances" confronting the actor.  *Id.* at 397 (citing *Scott v. United States*, 436 U.S. 128, 137 (1978)).  *See also Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) ("reasonableness is judged against the backdrop of the law at the time of the conduct.  If the law at that time did not clearly establish that the officer's conduct would violate the Constitution, the officer should not be subject to liability or, indeed, even the burdens of litigation.").

Plaintiffs allege that Defendants' partial denials of their proposed application designs incorporating Children First's slogan or advocacy message violated their First Amendment rights.  It is generally established that an individual has a right to hold a different view than the majority and cannot be compelled to foster the majority's message in violation of his First Amendment rights.  *See Wooley v. Maynard*, 430 U.S. 705 (1977) (deciding that New Hampshire

18

could not enforce criminal sanctions against an individual who objected to New Hampshire's

state motto, "Live Free or Die," and obscured the motto on the state's license plate, in violation

of state law, because the motto invaded the individual's First Amendment rights).  A survey of

the law concerning First Amendment rights and license plates, however, demonstrates a lack of

consensus regarding how to regulate controversial messages on license plates.

In recent years, many states have been faced with the decision of whether to approve a

specialty plate with a "Choose Life" message and, increasingly, actions have been initiated

challenging the states' decisions.[10]  The state of the law in 2003, when the alleged violation of

Plaintiffs' First Amendment rights occurred, was unclear.[11]  For instance, in *Sons of Confederate*

---

[10] Two types of actions have arisen.  The first involves a state offering a "Choose Life" plate without a counterpart pro-choice plate.  The second type involves a state's refusal to offer a "Choose Life" plate.  For purposes of the Court's analysis, it will focus on the latter type of action, as that is what is at issue here.

[11]  Since then, a few cases have added to the legal landscape and helped provide some further instruction; however, even those cases are distinguishable from the present fact pattern.  In *Choose Life Illinois, Inc. v. White*, No. 04-C-4316, 2007 U.S. Dist. LEXIS 21863 (N.D. Ill. Jan. 19, 2007), the Northern District of Illinois granted the plaintiff's motion for summary judgment.  The state denied the plaintiff's request for a specialty license plate that contained the words "Choose Life."  After the plaintiff's application was de facto denied by the Illinois General Assembly, the plaintiff brought suit against the Secretary of State of Illinois alleging the denial violated his First and Fourteenth Amendment rights.  Because the plaintiff's speech was deemed private and it was "undisputed that the reason for not approving the plate was because of the politically controversial nature of the message," the court found that the denial was based on viewpoint discrimination, which is unconstitutional in any forum.  *Choose Life*, 2007 U.S. Dist. LEXIS 21863 at *9.  Here, Defendants have not conceded that their partial denial of Plaintiffs' designs was because they were "politically controversial."  *See* n. 12, *infra*.
Similarly, in *Arizona Life*, the Ninth Circuit determined that the Arizona License Plate Commission's denial of plaintiff's specialty plate bearing the "Choose Life" message was viewpoint discrimination.  The Commission did not argue that the plaintiff did not meet the statutory requirements; rather, the "only justification the Commission [gave] for denying Life Coalition's application [was] that it chose not to enter the Choose Life/Pro-Choice debate."  *Az. Life*, 515 F.3d at 972.  The court found that the Commission's justification, coupled with its expressed concerns that "groups with opposing viewpoints would file applications for their own special organization plate," to be message-based and, therefore, deemed the denial viewpoint discrimination.  *Id.*  Here, Defendants partially denied Plaintiffs' designs not because of their desire to stay away from a controversial issue, but because they do not allow slogans or advocacy messages on any SOVR plate.

*Veterans*, the appellant was prohibited by a statutory logo restriction from receiving a special license plate, which would bear the symbol of the organization that included a Confederate flag. The Fourth Circuit upheld the lower court's finding that the statute violated the First Amendment.

In *Sons of Confederate Veterans*, the Virginia General Assembly created a program through which specialty license plates could be issued to various organizations and their members. The speciality plates needed to be authorized by statute and, typically, would bear the organization's motto and logo. The organization would contact a member of the General Assembly and request that a bill for the speciality plate be introduced to the legislature. The Virginia statute gave the Commissioner of the Department of Motor Vehicles authority to "'prescribe' the design of any special plate, stating that 'all special license plates issued pursuant to this article shall be of designs prescribed by the Commissioner....'" *Sons of Confederate Veterans*, 288 F.3d at 614 (quoting VA. CODE ANN. § 46.2-725(B)(3)). Once the organization received authorization from the General Assembly, the group worked together with the Commissioner to create the design. The Department of Motor Vehicles would send a letter to the organization asking it to submit a proposed design and also noted that "'you can use your organization's logo or create a logo to be placed on the plate.'" *Id.* (internal citation omitted).

The statute authorizing the Sons of Confederate Veterans ("SCV") specialty plate, however, contained a logo restriction that other Virginia specialty plate statutes did not have. Therefore, the SCV was prohibited from receiving specialty plates that bore a Confederate flag

---

and the organization brought an action seeking a declaration, among other relief, that the logo restriction was invalid under the First, Fifth, and Fourteenth Amendments.  Upon review, the Fourth Circuit conducted an analysis about whether speech on speciality license plates authorized by the General Assembly was private or government speech; the court found it to be private, which thereby implicated First Amendment rights because of the logo restriction.  Next, the court conducted a forum analysis "as the means of analyzing restrictions placed on private speech that occurs on government property," but determined that a forum analysis was unnecessary because it found that the restriction was not viewpoint neutral and, thus, the "restriction was presumptively unconstitutional in any forum."  *Id.* at 622.

The court did, however, engage in an analysis as to why it considered that the restriction discriminated based on viewpoint.  Because the restriction did not restrict the Confederate flag as a subject matter, but rather SCV's use of the flag in its logo, the Court deemed the restriction as viewpoint, rather than content, based.[12]  Through the restriction, the legislature essentially restricted the organization's access to the license plate forum and silenced the speech of a particular speaker within the forum.  Except for the general restrictions "relating to space and legibility of identifying information," no other restrictions were "imposed on all special plates."

---

[12] Viewpoint discrimination is a form of content discrimination, though it is not always easy to distinguish between the two.  *See Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819, 829 (1995) ("When the government targets not a subject matter, but particular views taken by speakers on a subject, the violation of the First Amendment is all the more blatant.  Viewpoint discrimination is thus an egregious form of content discrimination.").  Content discrimination focuses on the subject matter of the speech while viewpoint discrimination focuses on the opinion held on that particular subject matter.  *See Giebel v. Sylvester*, 244 F.3d 1182, 188 n. 10 (9th Cir. 2001) ("While the former describes the subject matter of the speech, and the latter the specific positions taken on the matter, the level at which 'subject matter' is defined can control whether discrimination is held to be on the basis of content or viewpoint.").

*Id.* at 626.  The court noted that the logo restriction imposed on the SCV was "the only restriction of its kind contained in any of the numerous special-plate authorizing statutes."  *Id.*  Further, the Court found that the content of the excluded speech was similar to content allowed on specialty plates for other organizations with viewpoints.  The court concluded that the logo restriction was viewpoint discrimination and did not survive strict scrutiny and, therefore, was impermissible.

The Fourth Circuit noted that its determination that the restriction was viewpoint-based differed from the conclusion the Second Circuit reached in *Perry v. McDonald*, 280 F.3d 159 (2d Cir. 2001).  The plaintiff in *Perry* submitted an application to Vermont's Department of Motor Vehicles ("Vermont DMV") for a vanity plate bearing the letters "SHTHPNS."  Vermont statute provided that a vehicle owner may obtain a vanity plate by paying an additional fee to the department as long as the numbers and letters used on the vanity plate met "certain criteria, including that the requested plate not be 'offensive or confusing to the general public.'"  *Perry v. McDonald*, 280 F.3d 159, 163 (2d Cir. 2001).  The Vermont DMV originally granted approval and issued the plates to plaintiff, but when the agency realized this was done in error, it took steps to recall the plates and replace them at no extra charge.  Plaintiff brought suit alleging that the First Amendment protected her right to have the letters "SHTHPNS" on her vanity plates.

The Second Circuit held that the plaintiff did not have a First Amendment right to have vanity plates bearing the letters she wanted.  The court conducted a forum analysis and found that the licence plates were a nonpublic forum.  After reviewing Vermont's stated policies and procedures, the court reasoned that Vermont's policy for issuing license plates was "to aid in vehicle identification."  *Id.* at 167.  The court also noted that although Vermont used the vanity plates to raise revenue, "nothing about the revenue-raising aim of the vanity-plate regime

22

suggest[ed] that Vermont intended to 'create a forum for unlimited public expression.'" *Id.* (citation omitted).  Further, the expressive activity on the vanity plates were subject to numerous restrictions and the general public did not have access to the program as a Vermont vehicle owner must have obtained permission for a vanity plate.  Moreover, the court determined that the vanity plates were "an unlikely means by which to engage in a meaningful 'assembly and debate.'" *Id.* at 168 (quoting *Perry Educ.*, 470 U.S. at 45).

Because the Second Circuit found the forum was nonpublic, it analyzed whether the denial of Plaintiff's vanity plate was reasonable and viewpoint neutral.  The court considered automobile license plates to be governmental property that served a governmental purpose and Vermont had a legitimate government concern "in not communicating the message that it approves of the public display of offensive scatological terms on state license plates."  *Id.* at 169. Vermont's restriction and denial of approval was reasonably related to the state's interest. Moreover, the court factored in that Vermont's policy did not prevent the plaintiff from communicating her message, or any others, on her automobile; she had other avenues for her speech such as bumper stickers.

The Second Circuit then found that Vermont's restriction against offensive terms on vanity plates was viewpoint neutral.  In other words, Vermont's policy did not oppose the plaintiff's philosophical views, but rather, because the "combination of letters that stands in part for the word 'shit'" was offensive.  *Id.* at 170.  Although the plaintiff argued that the agency issued several other vanity plates bearing scatalogical terms, the court disagreed and recognized that errors in processing do occur and simply because other vanity plates might have been issued in error does not prove that the plaintiff was a victim of viewpoint discrimination.  Additionally,

23

in regards to the vanity plates with scatalogical terms that were not issued in error, the court reasoned that it was the combination of an offensive scatalogical term in violation of the statute that got the plaintiff's vanity plate banned, and not her philosophical viewpoint.

Here, Plaintiffs contend that New Jersey law clearly allows for a logotype within the SOVR plate design without any restrictions.  They claim that because a "logo is going to be communicative in any event...even a word-free logo restriction would not be sensible."  Def. Br., pg. 15.  Further, Plaintiffs argue that Defendants' claim - that advocacy logotypes are precluded from SOVR plates because the Legislature has included for the use of these types of messages in legislatively-enacted special plates - fails.

After a review of the relevant case law at the time of Defendants' alleged violation, the Court finds that the law was not clearly established.  Plaintiffs' opposing arguments merely highlight why the Court grants Defendants qualified immunity.  The crux of the second inquiry of the qualified immunity defense is that because a law is not clearly established, a reasonable state actor could not know that she was violating the law.  Defendants could reasonably have believed that, similar to the Vermont DMV in *Perry*, New Jersey had a legitimate government interest in banning the use of advocating slogans or messages and that the restriction was viewpoint neutral as other advocating logotypes did not receive approval.  Additionally, unlike the plaintiff in *Sons of Confederate Veterans*, no similar content to Plaintiffs' advocacy message was allowed on other organizations' SOVR plates.

Not only was the relevant law unclear as to whether a restriction on messages on license plates violated the First Amendment, but New Jersey's statute is unclear as to what constitutes a logotype and whether the inclusion of an advocating logotype is permissible on an SOVR plate.

24

The statute only explicitly states that the decision concerning the use and arrangement of the logotype remains in the sole discretion of the Chief Administrator.[13]  Defendants could reasonably have believed, objectively, that the meaning of "logotype" included supplemental slogans, advocacy messages, or a website address alluding to an advocacy message, and that the authority to issue specialty license plates with slogans or advocacy messages is reserved for the Legislature.  Therefore, Legreide acted as a reasonable state actor would have in concluding that Children First's advocacy messages were not statutorily permissible.

C.      Due Process Claims

The Fourteenth Amendment provides that "no State shall...deprive any person of life, liberty, or property, without due process of law...." U.S. CONST. amend. XIV, § 1.  "[T]he Due Process Clause contains a substantive component that bars certain arbitrary, wrongful government actions 'regardless of the fairness of the procedures used to implement them.'" *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992) (quoting *Zinermon v. Burch*, 494 U.S. 113, 125

---

[13] Plaintiffs contend that the "exercise of unbridled discretion in any category of forum" is impermissible.  Def. Br., pg. 43 n. 10.  *See Lewis v. Wilson*, 253 F.3d 1077, 1080 (8th Cir. 2001) ("Where a regulation requires that a speaker receive permission to engage in speech, the official charged with granting the permission must be provided with specific standards on which to base his or her decisions.").  The *Lewis* court found the statutory language authorizing the Department of Revenue to deny a personalized license plate that is "obscene, profane, inflammatory, or contrary to public policy" gave the official "unbridled discretion."  *But see Perry*, 280 F.3d 159 (determining that the Vermont statute permitting the Vermont DMV to deny vanity plate applications that were "offensive" or "confusing" was permissible because the statute included the type of content not allowed and included the right to a pre-revocation hearing).  Here, the New Jersey statute specifically states that the Chief Administrator only has the authority to approve of SOVR plates that identifies the name of the organization.  Ms. Legreide does not have "unfettered discretion" to determine which SOVR plates to approve based on an organization's slogan or advocacy message.  *Lewis*, 253 F.3d at 1080.  Rather, the discretion to decide the appropriate slogans or advocacy messages is reserved for the Legislature.  Therefore, New Jersey's statute is permissible and not a violation of the First Amendment.

25

(1990)).  To prevail on a substantive due process claim Plaintiff "'must establish as a threshold matter that [s]he has a protected property interest to which the Fourteenth Amendment's due process protection applies.'"  *Hill v. Borough of Kutztown*, 455 F.3d 225, 235 n. 12 (3d Cir. 2006) (quoting *Nicholas v. Penn. State Univ.*, 227 F.3d 133, 139-140 (3d Cir. 2000)).  However, whether an interest is protected for purposes of substantive due process is not determined by reference to state law.  Rather, for a property interest to be protected for purposes of substantive due process, it must be "fundamental" under the United States Constitution.  *Nicholas*, 227 F.3d at 140.

The first step in a substantive due process "analysis is to define the 'exact contours of the underlying right said to have been violated.'"  *Leamer v. Fauver*, 288 F.3d 532, 546 (3d Cir. 2002) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 842 n. 5 (1998)).  In this case, Plaintiffs appear to base their substantive due process claim on the "unbridled discretion" of Legreide in determining which plate designs are accepted.  Am. Compl. ¶¶ 98-99.  Plaintiffs allege that "Defendants' policies are vague, for they fail to provide explicit standards guiding their enforcement, and enable Defendants to regulate speech on an arbitrary and discriminatory basis, with no safeguard against the use of impermissible factors in regulating speech."[14]  *Id.* at ¶ 107.

Children First, however, has no fundamental right created by the Fourteenth Amendment in New Jersey's special organization license plate, which would trigger substantive due process protection.  Moreover, Plaintiffs were only partially denied access to an SOVR plate.  Had Plaintiffs not included the slogan "Choose Life" or their alternate website "NJChoose-Life.Org,"

---

[14] See discussion, n. 13.

their application for a plate would have been granted.  Having failed to meet the threshold requirement of a fundamental interest protected by the Fourteenth Amendment, Plaintiffs have failed to state cognizable substantive due process claims.

To state a claim for a violation of procedural due process rights, "a plaintiff must allege that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him did not provide 'due process of law.'"  *Hill*,  455 F.3d at 234 (quoting *Alvin v. Suzuki*, 27 F.3d 107, 116 (3d Cir. 2000)).  Thus, the threshold issue with respect to Plaintiff's procedural due process claim is whether Plaintiff was deprived of a "cognizable liberty or property interest."  *Mudric v. Att'y Gen. of the United States*, 469 F.3d 94, 98 (3d Cir. 1995) (noting that "[i]t is axiomatic that a cognizable liberty or property interest must exist in the first instance for a procedural due process claim to lie").  As relevant to a procedural due process claim, these protected interests are not created by the Constitution, but rather are "created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits."  *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972).

Here, Plaintiffs allege that the delay in issuance of the final NJMVC agency decisions and the absence of standards for review of SOVR designs violated their Fourteenth Amendment procedural due process rights.  Plaintiffs could have sought remedies in state court for appellate review of the alleged inaction by the NJMVC and partial denials of their SOVR designs, but they did not.  Consequently, because Plaintiffs have not shown any "deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property" or the New

27

Jersey constitution, Plaintiffs' procedural due process claims fail.  *Roth*, 408 U.S. at 569.

      D.     *Equal Protection Claims*

      The Fourteenth Amendment provides that "no State shall...deny to any person within its jurisdiction the equal protection of the laws."  U.S. CONST. amend. XIV, § 1.  In other words, the Equal Protection Clause commands that "all persons similarly situated should be treated alike."  *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).  Furthermore, "the general rule is that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest."  *Id.* at 440.

      Plaintiffs contend that Defendants denied them access to the SOVR plate program while Defendants have allowed other similarly situated groups access to the program using logos and advocacy messages, and that there is "no compelling governmental interest to justify such disparate treatment."  Am. Compl. ¶ 115.  Plaintiffs' Equal Protection allegations fail.  "The viability of equal protection claims relating to expressive conduct is contingent upon the existence of a public forum."  *Monterey County Democratic Cent. Comm. v. United States Postal Serv.*, 812 F.2d 1194, 1200 (9th Cir. 1987).  *See also Perry Educ.*, 460 U.S. at 55 ("On government property that has not been made a public forum, not all speech is equally situated, and the State may draw distinctions which relate to the special purpose for which the property is used.").  The Court has determined that a license plate is a limited public forum.  As such, Plaintiffs do not have a fundamental right of access to the forum and, therefore, "regulations of government property which affect expressive conduct will be upheld if they 'rationally further a legitimate state purpose.'"  *Monterey*, 812 F.2d at 1200 (quoting *Perry Educ.*, 460 U.S. at 54).

As discussed above, the purpose of license plates is for vehicle identification.  Therefore, the regulation of advocacy logotypes is rationally related to the legitimate state purpose of not wanting to communicate that New Jersey does not approve or disapprove of any particular political cause, belief, or message.  Thus, Legreide reasonably concluded that Children First's logo, which included the advocacy message "Choose Life," was not statutorily permissible.  Legreide also reasonably concluded that Children First's subsequent submission, which included the alternate website name "NJChoose-Life.Org," was not statutorily permissible.  Furthermore, there is no basis to support Plaintiffs' contention that Defendants have treated similarly situated groups dissimilarly.

## IV.    Conclusion

For the reasons stated above, it is therefore the finding of the Court that Defendants are entitled to a qualified immunity defense.  Therefore, Defendants' motion to dismiss Plaintiffs' Amended Complaint is granted.  An appropriate order follows.


                                                    /s/ JOEL A. PISANO
                                                    United States District Judge

Dated: June 17, 2008

29